UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LERON EVERETT EASLEY-EL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-03138-JRS-DML |
| ) | |
| PAUL TALBOT, ) | |
| WEXFORD HEALTH SERVICES, ) | |
| DUSHAN ZATECKY, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

Plaintiff LeRon Everett Easley-El, is an inmate of the Indiana Department of Correction ("IDOC"). He alleges that prison health care providers and administrators at Pendleton Correctional Facility ("Pendleton") refused to treat his vertigo by denying him a bottom bunk pass in violation of his constitutional rights.

The defendants have moved for summary judgment, arguing that they were not deliberately indifferent to Mr. Easley-El's medical needs and that he was provided treatment consistent with Dr. Talbot's professional judgment. For the reasons explained below, the defendants' motion for summary judgment is **GRANTED**.

**I.
SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A).

A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.
## FACTUAL BACKGROUND

Consistent with the summary judgment standard the following material facts, taken in the light most favorable to the plaintiff, are undisputed.

**A. Leron Easley-El**

Mr. Easley-El has vertigo and is currently prescribed and taking the prescription medication, Meclizine, for his reports of dizziness. Dkt. 49-3. at p. 16 (Easley-El Depo. Trans).

He is currently housed in the L Dorm at Pendleton, which is an open dorm, and has been housed there for about three (3) years. Dkt. 49-3 at p. 11. In the L Dorm, Mr. Easley-El has the opportunity to participate in recreational time and participates almost every day. Additionally, Mr. Easley-El has had a job at Pendleton for almost one year and works five days per week. Mr. Easley- El has never missed work due to his feelings of dizziness. *Id.* at p. 12-13, 34.

Mr. Easley-El testified that he is suing Dr. Talbot because he had a bottom bunk pass for his medical condition (vertigo) regularly renewed since 2015,[1] but then in April 2019, Dr. Talbot told Mr. Easley that he no longer met the criteria to receive a medical bottom bunk pass. *Id.* at p. 17-18. Mr. Easley-El is suing Wexford of Indiana because it is Dr. Talbot's employer. *Id.* at p. 22.

In July 2015, Mr. Easley-El fell from the top bunk where he was assigned. After that, he was assigned to a bottom bunk and has never been reassigned to a top bunk. Dkt. 49-3 at p. 21. Mr. Easley-El currently has a bottom bunk pass. *Id.* Mr. Easley-El is worried and anxious that he

---

[1] For example, Mr. Easley-El was provided a three-month bottom bunk pass on July 1, 2015, Dkt. 52-1 at 2; a six-month bottom bunk pass on August 21, 2015, *id.* at 3; a six-month bottom bunk pass on February 10, 2016, *id.* at 4; a three-month bottom bunk pass on July 19, 2016, *id.* at 5; a six-month bottom bunk pass on December 16, 2016, *id.* at 6; a six-month bottom bunk pass on May 24, 2017, *id.* at 7; a six-month bottom bunk pass on June 20, 2017, *id.* at 8; a six-month bottom bunk pass on December 8, 2017, *id.* at 9; a six-month bottom bunk pass on July 5, 2018, *id.* at 10; a six-month bottom bunk pass on December 13, 2018, *id.* at 11, a six-month bottom bunk pass on February 6, 2020, *id.* at 12; and a six-month bottom bunk pass on August 24, 2020, *id.* at 13.

may be placed on a top-bunk again if he does not receive a permanent bottom bunk pass from the medical staff. *Id.* at p. 39.

In March 2020, Mr. Easley-El fell out of a chair in his dorm but did not notify the medical staff or a custody officer about the fall. Other than the fall from the bunk in 2015 and the fall from the chair in 2020, Mr. Easley-El has had no other falls at Pendleton. *Id.* at p. 27-28.

Mr. Easley-El believes he fits in the criteria for a bottom bunk pass because his periodic dizziness is similar to epilepsy or a seizure, two conditions that do qualify for a bottom bunk pass. *Id.* at p. 25 and 31. Mr. Easley-El admits that he has not been diagnosed with either epilepsy or a seizure disorder. *Id*. at p. 31-32.

**B. Dr. Paul Talbot, M.D.**

Paul Talbot, M.D. is a physician licensed to practice medicine in the State of Indiana. Dr. Talbot was employed as a physician by Wexford at Pendleton through November 2019. Dkt. 49-2 (Affidavit of Paul Talbot, M.D.) ¶¶ 1-2, 15.

During his time as a treating physician at Pendleton, Dr. Talbot had an opportunity to see and treat Mr. Easley-El on several occasions. On December 8, 2017, Dr. Talbot met with Mr. Easley-El for a chronic care visit. Mr. Easley-El's chronic conditions were identified as hypertension, GERD, and scalp psoriasis. At this appointment, Mr. Easley-El's hypertension was stable, and his GERD was improving. Mr. Easley-El did not present with any chest pain, confusion, fatigue, headache, nausea, or vomiting. Mr. Easley-El also had good control of his scalp psoriasis with the use of the prescription coal-tar shampoo. Mr. Easley-El was on a number of additional medications at this appointment, including Lipitor, Cozaar, Norvasc, Pepcid, and Omeprazole. Dkt. 49-2 at ¶ 5.

On January 3, 2018, Dr. Talbot met with Mr. Easley-El to discuss Mr. Easley-El's

commissary purchases, including sharp cheese, salsa, and tortilla chips. These purchases were considered abuses of the commissary based on Mr. Easley-El's medical conditions, and Dr. Talbot educated Mr. Easley-El on the importance of avoiding these types of foods and choosing a low-sodium diet. *Id.* at ¶ 6.

On September 28, 2018, Dr. Talbot met with Mr. Easley-El for a chronic care visit, where they discussed that Mr. Easley-El's hypertension diagnosis and management needed improvement. At that time, Mr. Easley-El was not taking his blood pressure medication as prescribed. Dr. Talbot increased Mr. Easley-El's dosage of Cozaar and educated him once again on the importance of compliance with all medications. Dr. Talbot further ordered that Mr. Easley-El's blood pressure be monitored each morning, and that he be placed on the Cardiac diet through December 2018. *Id.* at ¶ 7.

On December 13, 2018, Dr. Talbot met with Mr. Easley-El for a provider visit, where Mr. Easley-El requested a bottom bunk pass. Mr. Easley-El explained that he had been experiencing intermittent dizziness recently, but he was not experiencing it that day. Mr. Easley-El stated that he fell trying to get out of a top-bunk three years ago. Based on Dr. Talbot's review of the records, Mr. Easley-El had no documented falls since his reported fall from the top-bunk in 2015. At the time of this appointment, Mr. Easley-El had been noncompliant with his hypertension medication. Based on Dr. Talbot's medical training and judgment, he concluded that the failure to take medication as prescribed could play a role in Mr. Easley-El's dizzy spells. Based on Dr. Talbot's assessment, he added Metoprolol 12.5mg twice daily, ordered that Mr. Easley-El follow-up with the medical clinic in one month to re-evaluate his blood pressure, and ordered a low-bunk pass for three months. *Id.* at ¶ 8.

On January 14, 2019, Dr. Talbot met with Mr. Easley-El as a follow-up to the December visit regarding his hypertension and compliance with medication. Mr. Easley-El claimed that he had been "doubling-up" on certain medications and was now taking a new blood pressure medication in the mornings. It appeared that Mr. Easley-El's hypertension was uncontrolled due to his continued medication noncompliance. Dr. Talbot increased his Metoprolol to 25 mg twice daily and advised Mr. Easley-El that he is to take the medication at two different times of the day, not take both doses together once per day. Mr. Easley-El did not report any concerns with dizziness during this appointment. *Id.* at ¶ 10.

On March 7, 2019, Dr. Talbot met with and evaluated Mr. Easley-El. Mr. Easley-El requested that his bottom bunk pass be renewed. Dr. Talbot believed that Mr. Easley-El's hypertension needed improvement and ordered that his blood pressure be monitored for a period of one month. Based on Dr. Talbot's assessment at the appointment, he did not believe that Mr. Easley-El met the criteria for a bottom bunk pass at this appointment, and thus did not order one for him. *Id.* at ¶ 11. Relatedly, there is no evidence that Mr. Easley-El met the criteria for a bottom bunk pass during this appointment. Dkts. 49-1 at 26-29; 49-2 at 3. Mr. Easley-El has not provided any evidence that he had symptoms during the March 7, 2019, appointment that would have made him eligible for a bottom bunk pass.

On March 21, 2019, during a chronic care visit, Dr. Talbot noted that Mr. Easley-El's hypertension still needed improvement and that he was still noncompliant with his medication. After counseling during the appointment, Mr. Easley-El asked for a second chance to make improvements with his medication. Dr. Talbot increased the dosage of Metoprolol. Mr. Easley-El did not have any issues with either GERD or scalp psoriasis as the medications for both were effective. Dkt. 49-2 at ¶ 12.

On August 21, 2019, Dr. Talbot again met with Mr. Easley-El regarding the issue of a bottom bunk pass. Dr. Talbot reviewed the criteria that is required in order to allow a bottom bunk pass, and further advised that Mr. Easley-El still does not meet the criteria. The formulary for a bottom bunk pass considers many factors, including any recent surgical interventions, major joint fusion, any documented actual seizure disorders, gross obesity, gross neurological dysfunction, fractures or sprains, temporary illnesses, prosthetic limbs, and being over age 60 with a medical need. Based on Dr. Talbot's assessment, he did not believe that Mr. Easley-El met any of the criteria to receive a bottom bunk pass. Mr. Easley-El's self-reported dizziness had not been observed by any member of the medical staff, nor were there any documented falls around the facility to support Mr. Easley-El's theory that he clinically required a bottom bunk pass. *Id.* at ¶ 13.

Mr. Easley-El continued to receive medical services at Pendleton up through the time of Dr. Talbot's departure from the facility in November 2019. While Dr. Talbot was Mr. Easley-El's treating physician, Mr. Easley-El did not have any documented falls at the facility nor any documented issue with being on a top-bunk (in fact, he was never moved to a top-bunk). None of Mr. Easley-El's chronic care conditions required that he have a bottom bunk pass during his incarceration. Dr. Talbot never observed Mr. Easley-El to be uneasy on his feet or witnessed any dizzy spells. Dr. Talbot did not observe any clinical indication that Mr. Easley-El required a bottom bunk pass after March 2018. *Id*. at ¶ 15. Mr. Easley-El's noncompliance with medication may have played a role in the dizziness he reported he experienced from time to time, and Mr. Easley-El was educated on several occasions on the importance of taking medication as prescribed. *Id.* at ¶ 16.

**C. Warden Dushan Zatecky**

In 2019, Mr. Zatecky was the warden at Pendleton. He is not a medical professional and has never personally provided Mr. Easley-El with medical care. Dkt. 49-3 at p. 47; dkt. 49-4 at ¶ 2. Instead, in 2018 and 2019, Mr. Easley-Els' medical care was provided by the employees of Defendant Wexford of Indiana, LLC, including Dr. Paul Talbot. Dkt. 49-4 at ¶ 5.

In 2018 and 2019, the decision to order or not order a bottom bunk pass for Mr. Easley-El was made by Dr. Paul Talbot. Dkt. 49-4, ¶ 6. The decision to discontinue Mr. Easley-El's bottom bunk pass was not made by Mr. Zatecky. *Id*. at ¶ 8. Mr. Zatecky relies upon the medical professionals at Pendleton to make appropriate medical care decisions for Mr. Easley-El related to bottom bunk passes. *Id*. at ¶ 15. Mr. Zatecky did not intend Mr. Easley-El harm. *Id.* at ¶ 16.

Mr. Easley-El filed a grievance complaining that his bottom bunk pass was not renewed. Administrative procedure 00-02-301 sets forth the grievance process and is designed to provide a process where offenders committed to ("IDOC") may resolve concerns and complaints relating to their conditions of confinement. Dkt 53 at p. 8.; Dkt. 55 at p. 4. A prisoner may appeal a grievance by stating why the prior response was unacceptable and thus their reason for the appeal and basis for reinvestigation. *Id.*

Mr. Easley-El's grievance was denied, and he appealed the denial.[2] Dkt. 49-4 at ¶¶ 9-10 (Offender Grievance, Log No. 106733). The appeal informed Mr. Zatecky in detail that Dr. Talbot had discontinued Mr. Easley-El's bottom bunk pass and the related circumstances. *Id*. at ¶ 13. Mr. Zatecky reviewed and responded to Mr. Easley-El's detailed Grievance Appeal regarding his

---

[2] Mr. Easley-El argues that Mr. Zatecky had an obligation to "reinvestigate the complaint." Dkt. 55 at p. 5. But he does not cite to any evidence to support this argument. The grievance policy is not in the record and thus, the is no evidence to support Mr. Easley-El's claim that Mr. Zatecky was responsible for overruling a medical professional. *Id.* at p. 6.

bottom bunk pass. Dkt. 11 at p. 39-41. Mr. Zatecky denied the appeal because the appeal itself put him on notice that Mr. Easley-El's medical needs were being addressed. *Id.*

Thereafter, Mr. Zatecky spoke to Mr. Easley-El regarding his concerns related to a bottom bunk and directed that he stay in a bottom bunk in his present housing assignment, where Mr. Easley-El remains. Dkt. 49-3 at p. 54-55. Mr. Zatecky is no longer the warden at Pendleton. Dkt. 49-6 (Warden of Putnamville Correctional Facility); Dkt. 49-7 (Warden Dennis Reagle).

## III.
## DISCUSSION

### A. Deliberate Indifference Standard

Mr. Easley-El asserts an Eighth Amendment deliberate indifference claim against the defendants. At all times relevant to his claims, he was a convicted offender. Accordingly, his medical treatment and conditions of confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*,

836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). The defendants admit for purposes of this motion that Mr. Easley-El's complaints of dizziness could constitute a serious medical condition, as that term has been interpreted under the Eighth Amendment, if left untreated or ignored by providers. The defendants argue, however, that they did not display deliberate indifference to such condition.

"[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotations omitted).

"To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Plummer v. Wexford Health Sources, Inc.*, 609 F. App'x 861, 862 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotation omitted). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

### B. Claims against the Defendants

1. Dr. Talbot

Mr. Easley-El alleges that Dr. Talbot violated his Eighth Amendment rights when he refused to renew Mr. Easley-El's bottom bunk pass and instead focused on his high blood pressure. Dkt. 53 at p. 22 and 24. As a result, Mr. Easley-El allegedly suffered unnecessary mental and emotional anguish. *Id.* Dr. Talbot argues that he is entitled to judgment as a matter of law because he used his professional judgment to determine that Mr. Easley-El did not meet the requirements for a bottom bunk pass during several encounters in 2019, Mr. Easley-El has not fallen from his bunk since 2015, nor has he been assigned to a top bunk.

In December 2018, Mr. Easley-El requested a bottom bunk pass during a provider visit with Dr. Talbot due to experiencing intermittent dizziness. Mr. Easley-El explained that he fell trying to get out of a top-bunk in 2015. At the time of the appointment, Mr. Easley-El was noncompliant with his hypertension medication, which Dr. Talbot believed could be causing Mr. Easley-El's dizziness. Based on Dr. Talbot's assessment, Metoprolol 12.5mg was added to Mr. Easley-El's medications to take twice daily, and Dr. Talbot further ordered that Mr. Easley-El follow-up with the medical clinic in one (1) month to re-evaluate his blood pressure. Dr. Talbot ordered a low-bunk pass for three (3) months.

During a provider visit on March 7, 2019, Dr. Talbot determined that Mr. Easley-El did not meet the criteria for a bottom bunk pass and did not order a bottom bunk pass at that time. The formulary for a bottom bunk pass considers many factors, including any recent surgical interventions, major joint fusion, any documented actual seizure disorders, gross obesity, gross neurological dysfunction, fractures or sprains, temporary illnesses, prosthetic limbs, and being over age 60 with a medical need.

On August 21, 2019, Dr. Talbot met with Mr. Easley-El again regarding the issue of a bottom bunk pass. Dr. Talbot again reviewed the criteria with Mr. Easley-El that is required to order a bottom bunk pass, and further advised that Mr. Easley-El did not meet the criteria. None of Mr. Easley-El's chronic care conditions required that he have a bottom bunk pass during his incarceration. While Mr. Easley-El testified that he believed he could have qualified under the formulary as having epilepsy or seizure-type symptoms, he has never been diagnosed with either epilepsy or a seizure disorder. Finally, Mr. Easley-El's self-reported dizziness had not been observed by any member of the medical staff. Dr. Talbot never observed Mr. Easley-El to be uneasy on his feet or witnessed any dizzy spells, and Dr. Talbot did not observe any clinical indication that Mr. Easley-El required a bottom bunk pass after March 2018.

Further, Mr. Easley-El did not suffer any injury as a result of the discontinuation of his bottom bunk pass. During Dr. Talbot's time as Mr. Easley-El's treating physician, Mr. Easley-El did not have any documented falls.

There is no evidence that Mr. Easley-El suffered any harm because of Dr. Talbot's treatment decisions. There is no evidence that Dr. Talbot persisted in an ineffective course of treatment or that there was another treatment that he should have provided. Defendant Talbot cannot be found to be deliberately indifferent to Mr. Easley-El's medical care when he based his recommendations and decision regarding the bottom bunk pass on Mr. Easley-El's self-reported history of having no recent documented falls at the facility and also his history of noncompliance with medication, which he believed played a role in Mr. Easley-El's dizziness. There is no evidence that Dr. Talbot's decision not to renew the bottom bunk pass was based on anything more than his medical judgment. In other words, Mr. Easley-El cannot establish that Defendant Talbot knew of

a "substantial risk of harm to [Plaintiff] and … disregard[ed] that risk." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Accordingly, Defendant Talbot is entitled to judgment as a matter of law, and the motion for summary judgment is **GRANTED** in favor of Dr. Talbot.

### 2. Wexford of Indiana, LLC

Mr. Easley-El argues that Wexford violated Mr. Easley-El's Eighth Amendment rights by employing Dr. Talbot to be a physician at Pendleton. This claim must fail because there is no evidence that Dr. Talbot violated Mr. Easley-El's constitutional rights.

The claim against Wexford necessarily proceeds under the theory of municipal liability announced in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which the Seventh Circuit has held applies in § 1983 claims brought against private companies acting under color of state law. *Walker v. Wexford Health Sources*, Inc., 940 F.3d 954, 966 (7th Cir. 2019) (citing *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016); *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 795–96 (7th Cir. 2014)). Prevailing on such a claim requires evidence that a Wexford policy, practice, or custom caused a constitutional violation. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016). Thus, "[t]he first step in a *Monell* claim is proving a constitutional violation" and in the absence of a constitutional violation, Wexford is entitled to judgment as a matter of law. *MBM Holdings LLC v. City of Glendale*, No. 20-1286, 2021 WL 423760, at *3 (7th Cir. Feb. 8, 2021).

As explained above, Dr. Talbot's denial of a medical bottom bunk pass did not violate Mr. Easley-El's constitutional rights. In addition, Mr. Easley-El has not presented evidence that Wexford has an express written policy or a widespread custom that negatively impacted his bunk placement or that he was injured as a result of that policy. Accordingly, the motion for summary

judgment is **GRANTED** in favor of Wexford.

###### 3. Warden Zatecky

Mr. Easley-El argues that Mr. Zatecky, the former Warden of Pendleton, is liable to him because he failed to investigate his grievance appeal as required by prison policy. Dkt. 53 at p. 17. Mr. Easley-El further asserts that Mr. Zatecky is responsible for ensuring that inmates receive adequate care and that he turned a blind eye to Mr. Easley-El's vertigo and need for a bottom bunk pass. *Id.* at p. 19. In response, Mr. Zatecky argues that he was not deliberately indifferent to Mr. Easley-El's serious medical needs and that Mr. Easley-El expected more of him than the law requires. Dkt. 55 at p. 21.

The evidence reflects that Mr. Zatecky was not personally involved in the alleged deprivation of Mr. Easley-El's constitutional rights. He did not discontinue the bottom bunk pass and instead arranged for Mr. Easley-El to remain assigned to a bottom bunk while housed in his current dorm.

In addition, Mr. Zatecky cannot be held liable for failing to override Dr. Talbot's decision to discontinue Mr. Easley-El's bottom bunk pass for medical reasons. Instead, Mr. Zatecky did what was required of him. He received, reviewed, and responded to Mr. Easley-El's detailed Grievance Appeal, which informed him of the steps taken by Dr. Talbot concerning the bottom bunk pass, including Dr. Talbot's review of the matter with Mr. Easley-El. This review placed Mr. Zatecky on notice that Mr. Easley-El's medical needs were being addressed by a doctor. That Mr. Easley-El disagreed with Dr. Talbot's determination is immaterial. Mr. Zatecky reasonably relied on a medical professional to make appropriate medical decisions for Mr. Easley-El related to his need for bottom bunk pass. *See Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (grievance counselor responded reasonably by investigating the situation, making sure medical

14

staff was monitoring and addressing the problem, and reasonably deferring to medical professional's opinions). Mr. Zatecky is therefore "insulated from liability because he responded reasonably to [the prisoner's] complaints." *See Johnson*, 433 F.3d at 1011 (7th Cir. 2006) (internal quotation and citation omitted).

Accordingly, the motion for summary judgment is **GRANTED** in favor of Warden Zatecky.

## IV.
## CONCLUSION

There is no evidence that the defendants have violated Mr. Easley-El's constitutional rights. Accordingly, the motion for summary judgment, dkt. [47], is **GRANTED**.

Final judgment in accordance with this Order shall now issue.

**IT IS SO ORDERED**.

Date: 3/19/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LERON EVERETT EASLEY-EL
935141
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com

Archer Riddick Randall Rose
INDIANA ATTORNEY GENERAL
archer.rose@atg.in.gov